**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCO JOSE MORALES-ALEGRIA,
                        *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                        *Respondent.*

No. 03-73117

Agency No.
A92-399-656

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 17, 2006—Pasadena, California

Filed June 6, 2006

Before: John T. Noonan, Andrew J. Kleinfeld, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## COUNSEL

Adam V. Loiacono, Encino, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Margaret J. Perry, Senior Litigation Counsel & Arthur L. Rabin, Trial Attorney, U.S. Department of Justice, Washington, D.C., for the respondent.

---

## OPINION

BERZON, Circuit Judge:

The Board of Immigration Appeals (BIA) held that Francisco Morales-Alegria was removable because he had been convicted of an "aggravated felony" within the meaning of Immigration and Nationality Act (INA) section 101(a)(43)(R), 8 U.S.C. § 1101(a)(43)(R). Morales-Alegria maintains that his conviction for forgery under California Penal Code section 476[1] does not qualify as an "aggravated felony." He contends that (1) a conviction under section 476 is not necessarily "an offense relating to . . . forgery" because it does not require knowledge of the fictitious nature of the instrument, and (2) the government has not established that he was sentenced to a term of imprisonment of "at least one year" for his forgery offense, as § 1101(a)(43)(R) requires.

With respect to Morales-Alegria's first claim, we hold that a conviction under section 476 does require knowledge of the fictitious nature of the instrument and therefore is not broader than the federal definition of "offense relating to . . . forgery" on that account. We do not have jurisdiction to consider Morales-Alegria's second claim relating to the length requirement, because he did not exhaust it before the BIA.

---

[1] References to California Penal Code are to the 2005 version unless otherwise noted.

## I.

Pursuant to INA section 237(a)(2)(A)(iii), an alien who, at any time after admission, is convicted of an aggravated felony — defined to include "an offense relating to . . . forgery . . . for which the term of imprisonment is at least one year," 8 U.S.C. § 1101(a)(43)(R) — may be removed from the country. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). The government charged Morales-Alegria, a native and citizen of Guatemala, with removal for having committed an aggravated felony. The basis for removal was his prior conviction under California Penal Code section 476, entitled, "Forgery; fictitious or altered bills, notes or checks," which the government stated satisfied § 1101(a)(43)(R).

After a hearing, the Immigration Judge (IJ) issued an oral decision holding that Morales-Alegria was removable as charged, which Morales-Alegria appealed. The BIA dismissed Morales-Alegria's appeal, holding his conviction under section 476 was an aggravated felony for purposes of § 1101(a)(43)(R). Morales-Alegria timely petitioned this court for review of the BIA's decision.

We review de novo whether a conviction under state law is a removable offense. *Coronado-Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir. 1997).

## II.

[1] Jurisdiction in this case is governed by 8 U.S.C. § 1252, which limits our jurisdiction over petitions for review of final orders of removal. *See* 8 U.S.C. § 1252(a)(2)(C).[2] We have

---

[2]8 U.S.C. § 1252(a)(2)(C) provides:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is remov-

jurisdiction in this case because of the addition of subparagraph (D) to 8 U.S.C. § 1252(a)(2) by the REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a)(I)(A)(iii), 119 Stat. 231, 310. Pursuant to this new provision, the jurisdictional limits imposed by subparagraph (C), precluding review of removal orders against aggravated felons, do not apply to "review of constitutional claims or *questions of law* raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D) (emphasis added). Whether an offense is an aggravated felony for the purposes of 8 U.S.C. § 1101(a)(43)(R) is a question of law and therefore not subject to the jurisdictional constraints of § 1252(a)(2)(C). *See Notash v. Gonzales*, 427 F.3d 693, 695-96 (9th Cir. 2005) (explaining that after the adoption of the REAL ID Act, this court has jurisdiction over questions of law, including whether an offense is a crime involving moral turpitude); *Martinez-Perez v. Gonzales*, 417 F.3d 1022, 1025 (9th Cir. 2005) (noting that whether an offense constitutes an aggravated felony is a question of law); *see also Valencia v. Gonzales*, 439 F.3d 1046, 1048 (9th Cir. 2006) (holding, post REAL ID Act, that this court has jurisdiction to determine whether a crime is an aggravated felony, relying on pre-REAL ID Act cases).

## III.

Morales-Alegria argues that section 476 includes a broader range of conduct than generic "forgery." Specifically, Morales-Alegria maintains that an individual may be convicted of forgery under Penal Code section 476 without a showing that she had knowledge of the fictitious nature of the instrument, while the generic definition of forgery requires

able by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

such knowledge. We hold that while the generic definition of forgery does require such knowledge, so does section 476. Section 476, therefore, categorically meets the mens rea requirement for an "offense relating to . . . forgery."

## A.

**[2]** Morales-Alegria's prior conviction is considered an aggravated felony for federal sentencing purposes if it is an "offense relating to . . . forgery" for which the term of imprisonment is at least one year. 8 U.S.C. § 1101(a)(43)(R). Congress did not define the phrase "offense relating to . . . forgery." To define a provision in a statute describing a class of prior offenses, we have used one of two methodologies:

> [1] If the qualifying offense is described in terms of a traditional common law crime, then we have defined the offense in terms of its generic, core meaning. . . .

> [2] If, on the other hand, the qualifying offense is described in terms that do not embrace a traditional common law crime, we have employed the ordinary, contemporary, and common meaning of the statutory words.

*United States v. Corona-Sanchez*, 291 F.3d 1201, 1204 (9th Cir. 2002) (en banc) (internal quotation marks omitted) (quoting *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1143 (9th Cir. 2001)).[3]

_____

[3]Examples of crimes to which the first methodology applies are "theft" and "burglary." *See Corona-Sanchez*, 291 F.3d at 1204 (construing "theft offense"); *Ye v. INS*, 214 F.3d 1128, 1131-32 (9th Cir. 2000) (construing "burglary offense"). Examples of offenses that lend themselves to the second methodology are crimes such as "crime of violence" and "sexual abuse of a minor." *See Trinidad-Aquino,* 259 F.3d at 1144 (construing "crime of violence"); *Baron-Medina*, 187 F.3d 1144, 1146 (9th Cir. 1999) (construing "sexual abuse of a minor").

**[3]** Forgery offenses developed from the common-law crime of "larceny." 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 19.7(a), (j)(5) (2d ed. 2003) [hereinafter SUBSTANTIVE CRIMINAL LAW]. We therefore use the first approach and consider the generic, core meaning of the crime. *See Corona-Sanchez*, 291 F.3d at 1204 (using the first approach to define the generic crime of "theft offense" because the modern crime developed from the common-law crime of larceny). To do so, we look to common-law definitions, "the generic sense in which the term is now used in the criminal codes of most states," *Taylor v. United States*, 495 U.S. 575, 598 (1990), as well as other circuits' analyses of the generic offense. *See Corona-Sanchez*, 291 F.3d at 1205. Morales-Alegria only disputes the mens rea for the crime of which he was convicted. Accordingly, we only consider the knowledge and intent requirements traditionally included in the offense of forgery.

## B.

**[4]** The crime of forgery stems from the related crime of false pretenses, developed to fill a gap left in the evolution of the common-law crime of larceny. SUBSTANTIVE CRIMINAL LAW §§ 19.1(b), 19.2. Common-law larceny was originally limited to "(1) trespassory (2) taking and (3) carrying away of the (4) personal property (5) of another (6) with intent to steal it." *Id*. § 19.2. Although "[t]he definition of larceny . . . was expanded by judicial interpretation to include cases where the owner merely was deemed to be in possession," "[b]y the late 18th century, courts were less willing to expand common-law definitions." *Bell v. United States*, 462 U.S. 356, 359 (1983). As a result, no crime punishing individuals who obtained title to, rather than only physical possession of, property through fraudulent means existed under the common-law. *Id*.; 3 WHARTON'S CRIMINAL LAW § 343 (15th ed. 2005).

**[5]** The crime of obtaining property by false pretenses was first created by the English Parliament in 1757 to fill this gap. The English statute punished those who "knowingly and

designedly, by false pretense or pretenses, shall obtain from any person or persons, money, goods, wares or merchandises, with intent to cheat or defraud any person or persons of the same." SUBSTANTIVE CRIMINAL LAW § 19.7(a) (internal quotation marks omitted) (quoting 1757, 30 Geo. II, c.24 (Eng.)). At least one American jurisdiction recognized the English offense of "false pretenses" as part of the common-law. *Id.* § 19.7(a) n.4. Most jurisdictions, however, adopted false pretenses as a statutory crime. Although the statutory definition varies some from jurisdiction to jurisdiction, it generally consists of five elements: "(1) a false representation of a material present or past fact (2) which causes the victim (3) to pass title to (4) his property to the wrongdoer, (5) who (a) *knows his representation to be false* and (b) *intends thereby to defraud* the victim." SUBSTANTIVE CRIMINAL LAW § 19.7 (emphases added).

Forgery, a crime closely related to false pretenses, is "aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity." *Id.* § 19.7(j)(5).[4] Jurisdictions that recognize forgery as a common-law crime provide that "the essential elements of the crime are (1) a false making of some instrument in writing; (2) a fraudulent intent; [and] (3) an instrument apparently capable of effecting a fraud." *State v. Wheeler*, 20 Or. 192, 195 (1890); *see United States v. McGovern*, 661 F.2d 27, 29 (3d Cir. 1981). Furthermore, crimes of forgery require that one have knowledge of the falsity of the document. *See, e.g.*, *State v. Oliveira*, 730 A.2d 20, 25-26 (R.I. 1999) (explaining

---

[4]Unlike false pretenses, however, forgery is committed even if the forged document is not successfully passed. SUBSTANTIVE CRIMINAL LAW § 19.7(j)(5). Blackstone similarly defined forgery as "the fraudulent making or alteration of a writing to the prejudice of another man's right." WILLIAM BLACKSTONE, 4 COMMENTARIES *245. One of the principal statutes Blackstone relied upon to define forgery more specifically requires that one "forge or make, or knowingly . . . publish or give in evidence, any forged deed, court roll, or will, with intent to affect the right of real property." *Id.* (citing 5 Eliz., c. 14 (Eng.)).

the common-law elements of forgery); *Maloney v. State*, 91 Ark. 485, 488 (1909) (explaining the common-law elements for the crime of "uttering," or attempting to pass, a forged document).

**[6]** State statutory definitions of forgery rarely depart from common-law definitions, as they "do not repeal the common law, but merely codify existing case law." 36 Am. Jur. 2d *Forgery* § 3 (2005). Under the modern offense, then, "the intent to injure or defraud, and proof of a specific intent to defraud, such as through a showing that the person passing the instrument knew that it was forged, is essential to a conviction of the offense." *Id.* § 5 (footnote omitted). The Model Penal Code recognizes a similar definition:

> A person is guilty of forgery if, *with purpose to defraud or injure anyone*, or *with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone*, the actor:
>
> (a) alters any writing of another without his authority; or
>
> (b) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
>
> (c) utters any writing which he knows to be forged in a manner specified in paragraphs (a) or (b).[5]

---

[5]The MPC definition implicitly or explicitly requires knowledge of the false nature of the document in question. Under subsections (a) and (b), a person *must* know that a document is forged if she alters, makes, completes, executes, authenticates, issues or transfers a writing without authorization and with an intent to defraud or injure or with knowledge that he or she is facilitating a fraud or injury. Under subsection (c), the crime of "uttering" explicitly requires knowledge.

MODEL PENAL CODE § 224.1(1) (2001) (emphases added).

**[7]** In short, the common-law and generic state statutory definitions of "forgery" generally require both an intent to defraud and knowledge of the fictitious nature of the instrument.

## C.

The Third Circuit, in *Drakes v. Zimski*, 240 F.3d 246 (3d Cir. 2001), is the only other circuit that has analyzed the mental state requirements of forgery to determine whether an offense under a state statute constitutes an aggravated felony for the purposes of § 1101(a)(43)(R). In *Drakes*, the court considered a Delaware statute that criminalizes a variety of acts committed while "intending to defraud, deceive or injure another person," *Drakes*, 240 F.3d at 248 (internal quotation marks omitted) (quoting DEL. CODE ANN. tit. 11, § 861). While concluding that the Delaware statute was an offense "relating to . . . forgery," *Drakes* noted that "[c]ourts generally define traditional common-law forgery as requiring an intent to defraud[,]" "state forgery statutes frequently cite intent to defraud as the sole requisite intent," and federal statutes often require an intent to defraud. *Id.* at 249; *see also Wright v. United States*, 172 F.2d 310, 311 (9th Cir. 1949) (noting that federal forgery statutes that do not define forgery should be given their "common, ordinary meaning," which requires an "intent to defraud").

*Drakes* does not address whether knowledge of the fictitious nature of the instrument is required. "Intent to defraud," however, has been interpreted by federal courts as requiring such knowledge. *See United States v. Tarallo*, 380 F.3d 1174, 1181 (9th Cir. 2004) (stating that specific intent to defraud, as required by 18 U.S.C. § 1341, requires knowledge of the falsity of the statements at issue), *amended by* 413 F.3d 928 (9th Cir. 2005); *Albillo-Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir. 2000) (explaining that 18 U.S.C. § 472, which requires an

intent to defraud but does not mention "knowledge" of the falsity of the document, requires the latter).

**[8]** Given that the common-law and modern state statutory definitions of the mental state requirements for forgery are consistent with each other, as well as with the federal statutes reviewed in *Drakes*, we adopt a generic, core definition of forgery which requires intent to defraud and includes a mental state requirement of knowledge of the fictitious nature of the instrument.

## D.

**[9]** Having derived this definition, we must next determine whether Morales-Alegria's prior conviction under California Penal Code section 476 qualifies as an offense relating to forgery. *See Taylor*, 495 U.S. at 599-602. The threshold inquiry under *Taylor* is whether section 476 includes offenses not included in the generic offense. *See id.* at 599. If section 476 has the same, or more exacting, requirements as the generic offense, then "the conviction necessarily implies that the defendant has been found guilty of all the elements" of the offense as federally defined. *Id.* If, on the other hand, we were to conclude that section 476 is broader than the generic definition of forgery, we would undertake a second inquiry, employing a "modified categorical approach." *See Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002); *see generally Shepard v. United States*, 125 S. Ct. 1254 (2005); *Taylor,* 495 U.S. at 602. A modified categorical approach allows a "limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime." *Chang*, 307 F.3d at 1189.

**[10]** The statute that Morales-Alegria was convicted of violating, California Penal Code section 476, provides:

> Every person who makes, passes, utters, or publishes, with intent to defraud any other person, or

who, with the like intent, attempts to pass, utter, or publish, or who has in his or her possession, with like intent to utter, pass, or publish, any fictitious or altered bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of any real or fictitious financial institution as defined in Section 186.9 is guilty of forgery.

CAL. PENAL CODE § 476. Section 476 expressly requires an "intent to defraud" but does not explicitly include a knowledge requirement. California case law, however, generally construes "intent to defraud" as a specific intent element that requires "both knowledge of the true facts and an intent to deceive." *People v. Booth*, 48 Cal. App. 4th 1247, 1253 (1996) (emphasis added) (defining "intent to defraud" as used in CAL. INS. CODE § 1871(a)(1) and (5) (1992) (later codified at CAL. PENAL CODE § 550(a)(1) and (5)); 1 WITKIN, CALIFORNIA CRIMINAL LAW, ch. II § 8(a) (3d ed. 2000). Section 476's requirement of an "intent to defraud" therefore imposes a standard that includes "knowledge" of the fictitious nature of the instrument.

In 1998, the California Legislature removed an explicit "knowledge" requirement from section 476.[6] On its face, this

---

[6]Before the 1998 revisions, California Penal Code section 476 provided:

Every person who makes, passes, utters, or publishes, with *intention to defraud* any other person, or who, with the like intention, attempts to pass, utter, or publish, or who has in his possession, with like intent to utter, pass, or publish, any fictitious bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of some bank, corporation, copartnership, or individual, when, in fact, there is no such bank, corporation, copartnership, or individual in existence, *knowing* the bill, note, check, or instrument in writing to be fictitious, is punishable by imprisonment in the county jail for not more than one year, or in the state prison.

CAL. PENAL CODE § 476 (West 1988 & Supp. 1997) (emphases added).

modification could support Morales-Alegria's argument that section 476 does not require knowledge of the falsity of the document. Upon examination, however, we are convinced that the deletion did not substantively change the mens rea requirements of the statute but only conformed the language of section 476 to that of other similar statutes. In the introductory section to the bill that amended section 476, the legislative counsel's digest states that a purpose of the 1998 amendments was to "generally recast the knowledge and intent elements of several financial crimes to conform to a common scheme and each other." A.B. 2008, 1998 Cal. Legis. Serv. ch. 468. Significantly, this change took place *after Booth* made emphatically clear that the phrase "intent to defraud" in California statutes included knowledge of the false nature of the document. *See Booth*, 48 Cal. App. 4th at 1253. The 1998 amendment, it is evident to us, did not eliminate the knowledge requirement of the statute. Instead, in light of *Booth* and to eliminate any confusion, it removed superfluous language.

**[11]** The result, then, is that as construed by *Booth*, the phrase "intent to defraud" in section 476 requires "both knowledge of the true facts and an intent to deceive." *Booth*, 48 Cal. App. 4th at 1253. So, it embraces the knowledge requirement for "offenses relating to . . . forgery" under § 1101(a)(43)(R). Because in California knowledge of the falsity of the document is "inherent in the concept of intent to defraud," *see id.*, the lack of an explicit "knowledge" requirement in section 476 does not make that section broader than the generic, core definition of forgery that we adopt.[7] We

---

[7]We note that this case does not present us with a state statute that is broader than the core federal offense. We therefore are not required to determine how the additional "relating to" language of 8 U.S.C. § 1101(a)(43)(R) may widen the scope of offenses to which the aggravated felony term applies. *See Albillo-Figueroa*, 221 F.3d at 1073 (holding that a state conviction for "[p]ossession of counterfeit obligations" was sufficiently "related to counterfeiting" for the purposes of 8 U.S.C. § 1101(a)(43)(R) in part because the "relating to" language in the statute evidenced an intent to cover "a range of activities beyond those of counterfeiting or forgery itself.").

hold, therefore, that Morales-Alegria's claim — that his conviction under section 476 is not categorically a forgery offense because the generic definition, but not section 476, requires a showing of knowledge — fails.

## IV.   SUFFICIENCY OF THE SENTENCE

Pursuant to INA section 242(d), "[a] court may review a final order of removal only if [, inter alia,] . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Morales-Alegria "cannot satisfy the exhaustion requirement by making a general challenge to the IJ's decision, but, rather, must specify which issues form the basis of the appeal." *Zara v. Ashcroft*, 383 F.3d 927, 930 (9th Cir. 2004).

Morales-Alegria contends that his one-year-and-four-month sentence does not satisfy 8 U.S.C. § 1101(a)(43)(R), which requires that the offense relating to forgery be one "for which the term of imprisonment is at least one year." Citing section 473 of the Penal Code, Morales-Alegria argues that the maximum sentence he could have received for violating section 476 is one year. *See* CAL. PENAL CODE § 473 ("Forgery is punishable by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year"). Morales-Alegria argues that because his sentence exceeded one year, it must have incorporated unrelated enhancements such as for recidivism. Therefore, he contends, it is not possible to tell whether his sentence for forgery was at least one year.

Morales-Alegria did not raise this specific claim before the BIA. Nowhere in his brief to the BIA did he question the sufficiency of the length of his sentence. We therefore do not have jurisdiction to resolve this claim. *See Zara*, 383 F.3d at 931.

## V.

We reject Morales-Alegria's claim that his conviction under section 476 is not categorically a forgery offense

because the generic definition, but not section 476, requires a showing of knowledge. Morales-Alegria's claim that his sentence for forgery was not "at least one year" as required by § 1101(a)(43)(R) was not raised before the BIA. Morales-Alegria therefore did not exhaust that claim, and this court lacks jurisdiction to decide it.

**PETITION DENIED.**